## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | | |
|---|---|---|
| JANE DOE, 10, a minor, through her<br>mother and next friend, Julie Doe, 10<br>JULIE DOE, 10,<br>JANE DOE, 11, a minor, through<br>her parents and next friends,<br>Jane and John Doe 11,<br>JANE DOE, 11 and JOHN DOE, 11 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | No.  08-1287 |
| JON WHITE,<br>MCLEAN COUNTY UNIT DISTRICT<br>NO. 5 BOARD OF DIRECTORS,<br>JIM BRAKSICK, ALAN CHAPMAN,<br>DALE HEIDBREDER, and JOHN PYE, | )<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

## **REPORT AND RECOMMENDATION**

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Plaintiffs pursue state and federal claims arising from former teacher

Jon White's alleged sexual misconduct against his two of his first grade

female students, and the alleged response (or lack thereof) of school

administrators.

This case is before the Court for a Report and Recommendation on motions to dismiss by Defendants (d/e's 5, 7, 9, 11, 13, 27), and motions to strike punitive damages by the School District and Defendant Heidbreder (d/e's 4, 15).

## Legal Standard

To state a claim under federal notice pleading standards, all the Complaint must do is set forth a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Factual allegations are accepted as true and need only give "'fair notice of what the . . . claim is and the grounds upon which it rests.'" EEOC v. Concentra Health Serv., Inc., 496 F.3d 773, 776-77 (7th Cir. 2007), *quoting* Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007)(other citation omitted).  However, the plaintiff's "' . . . allegations, [must] show that it is plausible, rather than merely speculative, that he is entitled to relief.'" Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008)(quoted and other citations omitted).  Federal notice pleading standards apply to state claims proceeding in federal court.  Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Financing, 536 F.3d 663, 670(7th Cir. 2008);

<u>Beanstalk Group, Inc. v. AM General Corp.</u>, 283 F.3d 856, 863

(7th Cir. 2002).

## Analysis

### I. Punitive Damages

Plaintiffs agree that punitive damages are not available against

Defendant McLean County Unit District No. 5 Board of Directors (the

"School District") because the School District is a "local public entity"

immune from punitive damages.  745 ILCS 10/1-206 (local public entity

includes school district and school board); 745 ILCS 10/2-102 (local public

entity not liable for punitive damages).

Plaintiffs object, however, to the dismissal of punitive damages

against Defendant Heidbreder (the Assistant Principal), on the grounds that

745 ILCS 10/2-102 does not provide "blanket immunity" for employees of

public entities.  745 ILCS 10/2-102 states:

> Notwithstanding any other provision of law, a local public entity
> is not liable to pay punitive or exemplary damages in any action
> brought directly or indirectly against it by the injured party or a
> third party. In addition, no public official is liable to pay punitive
> or exemplary damages in any action arising out of an act or
> omission made by the public official while serving in an official
> executive, legislative, quasi-legislative or quasi-judicial
> capacity, brought directly or indirectly against him by the injured
> party or a third party.

Heidbreder does not argue that he was acting as a "public official" in an "official executive, legislative, quasi-legislative or quasi-judicial capacity." He asserts only that he is immune from punitive damages because he is an employee of a public entity.

Heidbreder's immunity from punitive damages under Section 10/2-102 depends on his status as a public official and whether he was "serving in an official executive, legislative, quasi-legislative or quasi-judicial capacity." Neither Heidbreder nor Plaintiffs address this question. In any event, the Court believes the determination would be premature and should be made on a more developed record, given the apparent paucity of case law interpreting this statute. *See* Lifton v. Board of Educ. of City of Chicago, 290 F.Supp.2d 940, 946 (N.D. Ill. 2003)(denying principal's motion to dismiss punitive damages as premature); Carroccia v. Anderson, 249 F.Supp.2d 1016, 1029 (N.D. Ill. 2003)(declining to decide "public official" question on motion to dismiss-noting that statute was unclear and had not been interpreted by Illinois courts); Harris v. City of West Chicago, Illinois, 2002 WL 31001888 (N.D. Ill. 2002)(not reported in F.Supp.2d) (dismissing punitive damages claim against district and assistant principal); Bedenfield v. Shultz, 2002 WL 1827631 (N.D. Ill. 2002)(police officer acting

sued in individual capacity not immune from punitive damages under 10/2-201)(noting split).  The court accordingly will recommend denial of Heidbreder's motion.[1]

## II.  Motion to Dismiss by Defendant White

### A.  IIED Claim by the Minor Plaintiffs Against White (Count VII)

The minor plaintiffs (the "minors") pursue claims against Defendant White (their former teacher) for battery (Count I), hate crimes (Count II), and intentional infliction of emotional distress (Count VII).  White moves to dismiss only Count VII, the claim for intentional infliction of emotional distress, on the grounds that the minors do not allege the "specific facts necessary" to state a claim.  He contends that a conclusory allegation that the minors suffered severe emotional distress from his sexual grooming, harassment and abuse is not enough.

The Illinois Supreme Court defines the tort of intentional infliction of emotional distress as:

> conduct . . . truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress. . .

---

[1]The parties do not address 745 ILCS 10/2-213, which offers similar protection from punitive damages for a "public employee."

.[citation omitted].  "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and duration of the distress are factors to be considered in determining its severity." Restatement (Second) of Torts § 46, comment j, at 77-78 (1965).

McGrath v. Fahey, 126 Ill.2d 78, 86 (1988).

The minors allege that they were first grade female students in White's class during the 2003-04 school year.  The minors allege that White sexually harassed them, sexually groomed them for the purpose of introducing sexual abuse, and/or sexually abused them.  These terms are defined in the Complaint to include a wide range of conduct, from giving special classroom treatment to sexual penetration.  (Complaint paras. 13-14).  The Complaint also defines sexual abuse to include a game White devised called the "taste test," in which he blindfolded a female first grader and "plac[ed] foods in her mouth by use of any combination of his hand and/or his penis and/or a banana."  (Complaint para. 12).  The Complaint alleges that White played the taste test game with female students during the 2003-04 school year, as well as showing them sexually suggestive photographs and touching their bodies, among other misconduct. (Complaint, para. 5).  White is now in prison, having pled guilty to the

criminal sexual abuse of 10 female students who were in his class after the minor plaintiffs.  (Plaintiff's Response, d/e 37, p. 2).

The minor plaintiffs here, however, do not specifically allege that White subjected them to all the misconduct listed in the definitions.  The specific examples the minors give of White's sexual misconduct against them are: White had Jane Doe 11 massage him under his clothes (Complaint ¶ 32); White touched Jane Doe 10 in such a way that she told her mother that she did not like it when White touched her (Complaint ¶ 29); White isolated Jane Doe 11 over lunch time and during gym (Complaint ¶ 30); and, White held Jane Doe 11 on his legs and bounced her (Complaint ¶ 31).[2]  The minors' parents allegedly told Defendant Heidbreder (Assistant Principal) of this conduct in March 2004, and the father of Jane Doe 11 personally confronted White.  Additionally, the month before the parents of another female student had also complained to Heidbreder and Braksick (the Principal) about White's sexual abuse/harassment/grooming of their daughter.  (Complaint ¶ 24).  Yet Heidbreder and Braksick allegedly did nothing, and  White "continued to

---

[2]Plaintiffs seem to assert in their responses that White held Jane Doe's "hands or body while she straddled his legs and he bounced her up and down on his legs."  (d/e 25, p.3).

sexually harass and/or sexually groom and/or sexually abuse Jane Doe-10 and Jane Doe-11."  (Complaint ¶ 45).

White does not appear to challenge that Plaintiffs have sufficiently plead the first two elements for intentional infliction of emotional distress: truly extreme and outrageous conduct and an intent to inflict severe emotional distress.  The Court agrees that they have sufficiently pled those elements.

> "Whether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of a particular case." . . .  In particular, the Illinois Supreme Court has noted three factors used to evaluate the alleged outrageousness of a defendant's conduct. First, the more power or control the defendant has over the plaintiff, the more likely the conduct will be deemed extreme. . . .Second, and in conjunction with the first consideration, courts must consider whether the defendant reasonably believed its objective was legitimate. . . . . Finally, courts must consider whether the defendant was aware the plaintiff was "peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity."

Franciski v. University of Chicago Hospitals, 338 F.3d 765, 769 (7th Cir. 2003)(citations and quoted cites omitted).

Describing White's conduct against the minors as "truly extreme and outrageous conduct" is an understatement, in the Court's opinion.  The allegations must be taken as a whole: all of White's conduct was part of his

intentional plan to sexually harass, groom and/or abuse his students.  It is hard to imagine conduct more extreme and outrageous than a teacher grooming his first grade student for sexual encounters.  White's control over the minors, as their teacher, was near absolute.  The minors' tender ages made them particularly vulnerable to and powerless against White's abuse.  As to the second element, White's intention to inflict severe emotional distress on the minors, or his knowledge that his conduct would cause severe emotional distress to them, is also obvious from the allegations.

White's argument seems to focus on the third element: severe emotional distress.  He argues that the minors cannot plead conclusorily that they suffered severe emotional distress.  The Court believes that White's conduct against the minors allows a plausible inference that the minors have suffered severe emotional distress.  The more the outrageous the conduct, the more obvious the emotional distress.  The Illinois cases cited by White do not involve conduct as egregious as White's against victims as vulnerable as the minors.  For example, <u>Reilly ex. rel. Reilly v. Wyeth</u>, 377 Ill.App.3d 20 (1st Dist. 2007), involved a claim against a vaccine manufacturer for using an FDA-approved preservative in a vaccine that

parents believed had caused their children's autism.  The Court in <u>Reilly</u> held that the allegations did not describe extreme and outrageous conduct or suggest that the manufacturer knew that using an approved preservative would cause severe emotional distress. <u>Welsch v. Commonwealth Edison Co.</u>, 306 Ill. App. 3d 148 (1st Dist. 1999), involved various adverse employment actions taken against employees for their report of safety violations.  <u>Welsch</u>, 306 Ill. App. 3d at 154 ("courts have generally declined to find an employer's retaliatory conduct sufficiently extreme and outrageous as to give rise to an action for intentional infliction of emotional distress.").  Similarly, <u>Stoecklein v. Illinois Tool Works, Inc.</u>, 589 F.Supp. 139 (N.D. Ill. 1984) involved the discharge of employee.

In sum, the Court believes that the minors have sufficiently pled an IIED claim against White.  The Court will therefore recommend that White's motion to dismiss be denied to the extent it seeks dismissal of this claim.

### B.  IIED Claim by the Parents Against White (Count IV)

Count IV is a claim by the minors' parents against White for intentional infliction of emotional distress.  The claim is based on White's: 1) sexual misconduct against their children; 2) telling the parents that he would not stop hugging their daughters; 3) refusing to stop his unwanted

touching of their children after the parents told him to stop; 4) calling the minors' mothers at home after the parents reported his misconduct to the school; and 4) concealing prior parent reports of sexual misconduct against him.  White argues that this claim is barred by the statute of limitations and that it fails to state a claim.

### 1.  Statute of Limitations

White argues that the parents' claim against him for intentional infliction of emotional distress is barred by the two-year statute of limitations for personal injury set forth in 735 ILCS 5/13-202 ("[a]ctions for damages for an injury to the person, . . ., shall be commenced within 2 years next after the cause of action accrued . . .); Pavlik v. Kornhaber, 326 Ill.App.3d 731, 744 (1st Dist. 2001)("We agree that the applicable statute of limitations for intentional infliction of emotional distress is two years."). White's last abuse of the minors would have ended with the 2003-2004 school year, which is more than four years before the parents filed their IIED claim against him.  *See* Feltmeier v. Feltmeier, 207 Ill.2d 263, 284 (2003)(applying concept of continuing tort to IIED claim and holding that "the statute of limitations is only held in abeyance until the date of the last injury suffered or when the tortious acts cease.").

The parents assert that their IIED claim against White is "an action for damages for personal injury based on childhood sexual abuse" and is thus governed by the longer statute of limitations in 735 ILCS 5/13-202.2, which provides in relevant part:

§ 13-202.2. Childhood sexual abuse.

(a) In this Section:

"Childhood sexual abuse" means an act of sexual abuse that occurs when the person abused is under 18 years of age.

"Sexual abuse" includes but is not limited to sexual conduct and sexual penetration as defined in Section 12-12 of the Criminal Code of 1961.

(b) Notwithstanding any other provision of law, **an action for damages for personal injury based on childhood sexual abuse** must be commenced within 10 years of the date the limitation period begins to run under subsection (d) or within 5 years of the date the person abused discovers or through the use of reasonable diligence should discover both (i) that the act of childhood sexual abuse occurred and (ii) that the injury was caused by the childhood sexual abuse. The fact that the person abused discovers or through the use of reasonable diligence should discover that the act of childhood sexual abuse occurred is not, by itself, sufficient to start the discovery period under this subsection (b). Knowledge of the abuse does not constitute discovery of the injury or the causal relationship between any later-discovered injury and the abuse.

                    *           *            *

(d) The limitation periods under subsection (b) do not begin to run before the person abused attains the age of 18 years; and, if at the time the person abused attains the age of 18 years he

or she is under other legal disability, the limitation periods under subsection (b) do not begin to run until the removal of the disability.

(d-1) The limitation periods in subsection (b) do not run during a time period when the person abused is subject to threats, intimidation, manipulation, or fraud perpetrated by the abuser or by any person acting in the interest of the abuser.

\*           \*           \*

735 ILCS 5/13-202.2 (emphasis added).

The question is whether the parents' IIED claim is "based on childhood sexual abuse" within the meaning of § 202.2.  The Court has been unable to find any published precedent on point, and the parents assert that this is a question of first impression.  In one unpublished case, John Doe v. Woodridge Elementary School District, 2005 WL 910732 (N.D. Ill. 2005)(not reported in F.Supp.2d), the mother of a child who had allegedly been sexually abused at school sued the school district on various state law claims.  The court dismissed the mother's claims as barred by the statute of limitations in the Tort Immunity Act.  The court  held that "by its plain language 735 ILCS 5/13-202.2 does not apply to [the mother's] claim since she is not the 'person abused.'" 2005 WL 910732 *5. There was no further analysis in the opinion, however.

Thus there appears to be no controlling case law on the question, and § 202.2 does not specifically say "any action for damages *by or on behalf of the person abused* based on childhood sexual abuse *of the person abused*." However, the Court believes it is clear from reading § 202.2 in its entirety that it is intended to apply only to actions brought by or on behalf of the person abused, not to persons claiming derivative injury from the child abuse of someone else. The term "person abused" is used throughout the section to define when the limitations period begins to run and when it tolls. *See* County of Du Page v. Illinois Labor Relations Bd., 231 Ill.2d 593, 2008 WL 5246054 *4 (Ill. 2008)("Words and phrases should not be considered in isolation; rather, they must be interpreted in light of other relevant provisions and the statute as a whole."). The section adjusts the limitations based on the abused person's knowledge of the sexual abuse and injury therefrom, the abused person's legal ability or disability, and whether the abused person is subjected to threats or manipulation. 735 ILCS 5/13-202.2 (b), (d), (d-1). The Court believes the only reasonable interpretation, looking at § 202.2 in its entirety, is that it applies only to actions brought by or on behalf of the abused person.

Even if the Court thought § 202.2 was ambiguous, legislative history supports the conclusion that the section is intended only for the person abused.  In 2003, § 202.2 was amended to extend the limitations and clarify the discovery rule.  The changes were described as extending the number of years that the *victim* of child abuse has to file a civil suit from two years to ten years.  *Hearing before House of Representatives on Senate Bill 1035*, *A Bill for an Act in Relation to Child Abuse*, 93rd General Assembly, Regular Session, May 15, 2003 (Westlaw cite: IL H.R. Tran. 2003 Reg. Sess. No. 59).[3]  This legislative history shows that the legislature has understood §202.2 to cover actions by the *persons abused*, not to people claiming injury based on someone else's childhood abuse.  The legislature's understanding of §202.2 is buttressed by the dearth of case law addressing the parents' argument: in the 17 years since the section was enacted, the Court is aware of only one case (Woodfield, *infra*)

---

[3]". . . What this Bill would do, as far as the civil statute of limitations, it would permit a victim of child sexual abuse to file a civil suit against his or her perpetrator up to ten years after the victim reaches the age of 18.  Presently, it's two years after the victim reaches the age of 18, or 5 years after the victim discovers the abuse and understands that he or she was harmed by this. . .by this abuse."  (statement of Mr. Brosnahan)(page 15 on Westlaw printout).  ". . . Under . . . right now, under present law, the victim has two years to file that civil action, based on childhood sexual abuse. . . .Instead of two years, Ill just read it off here, it gives the victim of childhood sexual abuse up to ten years to file a civil suit."  (statement of Mr. Brosnahan)(page 18 on Westlaw printout).

in which the argument to expand the plaintiffs covered by § 202.2 was tried, and that attempt failed.  *See also* Doe v. Montessori School of Lake Forest, 287 Ill.App.3d 289, 302 (2d Dist. 1997)(holding that parents have separate, independent cause of action arising out of sexual abuse of their child, but remarking that "the parent's cause of action may be barred by limitations, though the child's is not.").  The parents' interpretation of § 202.2 would allow them to wait until their children are at least 23 years old to bring their claim, perhaps even longer, even though the parents know of their claim and have the legal ability to bring it.

The parents cite Hobert v. Covenant Children's Home, 309 Ill.App.3d 640 (3d Dist. 2000).  Yet Hobert was filed by the person abused, not by the abused person's parents.  In Hobert, the abused person sued the sexual abuser's employer, for hiring and retaining the sexual abuser.  The Court in Hobert held that § 202.2 applied to toll the limitations to the plaintiff's action against the employer, since the employer had a duty to protect the plaintiff. 309 Ill.App. 3d at 643-44.  Hobert's holding does not support the parents' expansive reading of § 202.2 to include their IIED claim.

The Court will therefore recommend that the parents' IIED claim against White be dismissed as barred by the two year statute of limitations

in 735 ILCS 5/13-202.  This conclusion necessarily requires dismissal of the parents' claims against the school administrators for IIED and fraud (which are also more than two years old), as well as their claims against the school district for respondeat superior liability based on those claims.

### 2.  Failure to State a Claim

In light of the Court's conclusion that the parents' IIED claim against White is barred by the statute of limitations, the Court will not address whether the parents, as a matter of law, can state an IIED claim against White based on his sexual abuse of their children.  The Court has reviewed all the parties' submissions on this question, and the answer does not appear clear cut.  The Court feels it is wiser not to give what would amount to an advisory recommendation on this question.

### III.  Motions to Dismiss by School Administrators

Defendant Braksick was the Principal of the minors' school. Defendant Heidbreder was the Assistant Principal of the minors' school. Defendant Pye was the Assistant Superintendent of Operations and Human Resources for the School District.  Defendant Chapman was the Superintendent for the School District.  Each has filed his own motion to

dismiss, but many of the arguments overlap.  Collectively, the Court will refer to them as the "School Administrators."

### A.  Parents' Claims for IIED and Fraud

The parents pursue claims against the School Administrators for intentional infliction of emotional distress and common law fraud.  The School Administrators argue that these claims are barred by the one year statute of limitations in the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/8-101.  The parents counter, as they did against White's motion, that the longer limitations in 735 ILCS 5/13-202.2 applies to their claims.  For the reasons discussed above, the Court concludes that section 202.2 does not apply to the claims brought by the parents.  Accordingly, the Court will recommend that these claims be dismissed as barred by the statute of limitations.[4]   The Court does not address the defendants' other arguments for dismissal of these claims.  Dismissal of these claims necessarily requires dismissal of the companion respondeat superior claims against the School District.

---

[4]The parents do not make any other argument that the one year limitations does not apply.  Even if the two year limitations applied, it would bar their claims.

**B.  Claims Based Solely on Mandated Reporting Requirement**

The minors bring claims against the School Administrators for breaching their ministerial duties of mandated reporting.  The claims sound in negligence and wilful and wanton neglect.  (Counts XI and XIII).  The minors allege that the School Administrators violated their mandating reporting duties by: failing to timely report accusations of White's abuse of a female student in or around February 2004 (Jane Doe 12, who is not a plaintiff here); failing to timely report the accusations of abuse by the minor plaintiffs; failing to timely report White's sexual grooming/harassment/abuse; and, failing to report White's unauthorized isolation of his female students.  (Complaint ¶¶ 108-110).  The minors allege that the failure to make these mandated reports caused them additional suffering at the hands of White, in the form of bodily injury, severe emotional distress and educational harm.  (Complaint ¶ 114).

The Court first notes that Plaintiffs agree to the dismissal of their claim for conspiracy to violate the mandated reporting act.  Accordingly, the Court will recommend dismissal of Count XX and Count XXI, which is the corresponding respondeat superior claim against the School District.

The Complaint does not specify the origin of the alleged duty to report, but it is clear from the briefs that it is Illinois' Abused and Neglected Child Reporting Act, 325 ILCS 5/1 *et seq.* ("ANCRA").  ANCRA requires certain individuals, including school personnel, to immediately report to the Illinois Department of Children and Family Services "a child known to them in their professional or official capacity" if they have "reasonable cause to believe [that child] may be an abused child or a neglected child."  325 ILCS 5/4.[5]  Criminal and disciplinary sanctions are provided under the Act for willful violations, but the Act has no provisions for civil sanctions.  <u>Cuyler v. U.S.</u>, 362 F.3d 949, 951 (7th Cir. 2004).

As the parties know, Magistrate Judge Bernthal recently issued a comprehensive Report and Recommendation, in part addressing this issue.  <u>Doe v. Urbana School District 116</u>, 08-CV-2169 (C.D. Ill. 2008), 2009 WL 268823 (C.D. Ill. 2008)(not reported in F.Supp.2d).  Chief Judge McCuskey adopted the Recommendation in full on February 3, 2009.

The Urbana case is also about White's sexual abuse of students, but at a different school.  According to the allegations in the Urbana case, the

---

[5]Anyone can file a report, but only "mandated reporters" are *required* to file reports if they have reasonable cause to believe a child is abused or neglected.  *See http://www.state.il.us/dcfs/faq/index.shtml* ("Child Abuse and Neglect").

same School Administrators who are defendants in this case concealed White's abuse, gave him a false letter of recommendation and "passed" him to another school district, where he continued to abuse his female students.  As is relevant here, the minor plaintiffs in the Urbana case (who were students at the school to which White was passed) sued Braksick, Heidbreder, Pye and Chapman for violating their mandated reporting duties.

Judge Bernthal concluded that the Seventh Circuit's decision in Cuyler v. United States, 362 F.3d 949, 954-55 (7th Cir. 2004) was dispositive.  In Cuyler, the Seventh Circuit held that hospital staff owed no duty to potential victims to report suspected child abuse, either under common law or under ANCRA.  Judge Bernthal accordingly concluded that, under Cuyler, Braksick, Heidbreder, Pye and Chapman owed no legal duty to the students of the school to which they passed White.  Doe v. White, 2009 WL 268823 *6.  Judge Bernthal recommended that the claims against Braksick, Heidbreder, Pye and Chapman for failing to report (both negligent and wilful and wanton) be dismissed, as well as the other claims against them based on their "passing" White.  Pursuant to Judge McCuskey's

adoption of the Recommendation, those claims were dismissed, leaving only the students' claims against White.[6]

In Cuyler, a babysitter abused a 14 month old child, who was taken to the hospital for treatment of his injuries.  It can be inferred that the medical staff who treated the child had a reasonable belief that the child had been abused, but the staff made no report, though they were required to under ANCRA.  Twenty-eight days later the babysitter inflicted fatal injuries on another child whom she was babysitting.  The Administrator of the deceased child's estate sued the hospital staff for failing to report the first instance of abuse.  The jury awarded four million dollars, but the Seventh Circuit reversed.[7]  The Seventh Circuit held that the hospital staff owed no common law duty or duty under ANCRA to the second child abused to report the abuse of the first child.  The Court in Cuyler reasoned that "the mere fact that a statute *defines* due care does not in and of itself create a duty enforceable by tort law."  362 F.3d at 952.  The Court stated that "[n]othing in the statute's text indicates that the legislature meant to expand

---

[6] The Urbana School District had previously settled and had been dismissed as a defendant.

[7]The case proceeded under the Federal Tort Claims act against the medical staff at a Naval hospital.

the scope of tort liability to encompass people who fail to report child abuse and are thus analogous to bystanders who fail to intervene to prevent injuries by third parties."  362 F.3d at 954.  The Court also noted that "It is of some significance that in the almost 30 years in which ANCRA has been on the books, no cases have been reported in which a tort suit was premised on a failure to report potential abuse, in violation of the statute."  Id. at 955.

Plaintiffs are correct that this case is different from the Urbana case because the minors in this case were students at the same school and school district where the School Administrators worked.  In the Urbana case, the minors were students of a different school and school district.  The same sort of distinction is true of Cuyler: the deceased child in Cuyler had not been under the care of the hospital staff.  Thus, the School Administrators here were not just "Good Samaritans" in relation to the minor plaintiffs in this case.  That difference *is* critical to determining whether the School Administrators owed duties of care to the minors in this case.  The Seventh Circuit in Cuyler recognized that

> A conventional principle of tort law, in Illinois as elsewhere, is that if a statute defines what is due care in some activity, the violation of the statute either conclusively or (in Illinois) presumptively establishes that the violator failed to exercise

> due care. . . .But the statutory definition does not come into
> play unless the tort plaintiff establishes that the defendant owes
> a duty of care to the person he injured . . ., because tort liability
> depends on the violation of a duty of care to the person injured
> by the defendant's wrongful conduct.

362 F.3d at 952.

School administrators do have a common law duty to protect students in their care and custody from known and specific risks danger, and breach of that duty is actionable in tort (see below).  However, the common law duty of care owed by the School Administrators to the students in their care and custody does not include a duty to report suspected child abuse to authorities.  Plaintiffs do not argue that such a reporting duty existed at common law, nor has the Court found any in its research.  If Defendants *did* have such a common law duty to report, ANCRA might help define that duty, as Illinois statutes have been used to define other common law duties of care in tort actions.  *See, e.g.,* Snyder v. Curran Township, 167 Ill.2d 466 (1995)(once township determined that roadway curve needed warning sign, township had duty to erect sign nonnegligently, and the standard of care was informed by the ministerial directives in the Vehicle Code and State Manual); Green v. Carlinville Community Unit School Dist. No. 1, 381 Ill.App.3d 207, 456 (4th Dist. 2008)

(school district operating buses owed students "highest duty of care" in that operation; statute requiring criminal background check helped define that standard of care and was ministerial); Hill v. Galesburg Community Unit School Dist. 205, 346 Ill.App.3d 515 (3rd Dist. 2004)(school district had common law duty to provide safety equipment for students; Eye Protection Act helped define standard of care in relation to that duty and was ministerial); Trotter v. School Dist. 218, 315 Ill.App.3d 1 (1st Dist. 2000) (once school undertook to operate swimming pool, it had a duty to do so nonnegligently; ministerial State regulations setting minimum safety requirements helped define that duty).

Here, though, there is no underlying common law duty to report. ANCRA created that duty, and there is no tort liability for its violation.  Both the Seventh Circuit and Illinois Courts have held that ANCRA does not provide, expressly or impliedly, for a private right of action based on its violation.  Varela v. St. Elizabeth's Hospital of Chicago, 372 Ill.App.3d 714, 692 (1st Dist. 2007); Doe v. North Central Behavioral Health Systems, Inc., 352 Ill.App.3d 284, 288 (3d Dist. 2004)("There is no evidence that the statute [ANCRA] was designed to provide monetary remedies for victims of

abuse or to impose civil liability on those who fail to report."); Cuyler, 362 F.3d at 954-55.

Plaintiffs contend that Doe v. Dimovski, 336 Ill.App.3d 292 (2d Dist. 2003) supports a reporting duty under ANCRA that is actionable in tort.  In Dimovski, a teacher had sexual relations with a student.  An agent of the school board was allegedly made aware of a prior complaint against the teacher before the incident, but the agent failed to investigate, tell anyone else, prohibit the teacher from the conduct, or contact DCFS.  The student sued the school board for negligence and willful and wanton misconduct, alleging failure to hire competent teachers, failure to adequately train, failure to investigate the previous complaint, failure to take action in response to the previous complaint, failure to supervise, and failure to notify DCFS.

The Court in Dimovski held that the school board had no section 2-201 discretionary immunity for failing to contact DCFS, reasoning that school personnel had no discretion under ANCRA to determine what was "reasonable cause to believe" abused had occurred.  336 Ill.App.3d at 297. According to the Dimovski Court, once the student and her mother notified school personnel of the incident, the school had no "choice but to report the

suspected abuse to DCFS," absent facts indicating the allegations were not credible.  Id.  Two cases in the Northern District of Illinois have reached opposite conclusions, holding that ANCRA's duty to report is a discretionary act, and not addressing whether there was an underlying duty in a tort liability sense.  Peck v. Aurora School Dist. 129, 2006 WL 2579678 (N.D. Ill. 2006); Doe v. Bd. of Educ. Of Consolidated School Dist. 230, 18 F.Supp.2d 954, 962 (N.D. Ill. 1998)(pre-Dimovski).

Dimovski did not address whether a private right of action exists based on failing to report under ANCRA.  Dimovski's decision was limited to section 2-201 discretionary immunity.[8]  The Court agrees with Judge Bernthal's analysis: whether a legal duty exists, actionable in tort, is the first question.  To the extent Dimovski implies that a tort action exists for the violation of ANCRA reporting duties, the Court must disagree with that conclusion.  In the Court's opinion, Cuyler's holding that ANCRA does not create a private cause of action for tort liability is dispositive of Counts XI and XIII; immunity is irrelevant.

_____

[8]Further, the lower court in Dimovski had dismissed the entire case against the school board based on 2-201 immunity, even though the plaintiffs had alleged that the school board had constructive knowledge of the teacher's misconduct and failed to take any action.  In this Court's opinion, those allegations were enough to survive a motion to dismiss based on immunity even without the reporting allegations (see discussion below).

Accordingly, the Court will recommend dismissal of Counts XI and XIII.  This will necessarily require dismissal of the companion respondeat superior claims against the School District (Counts XXII and XIV).

### C.   Remaining Tort Claims by Minors Against School Administrators: Failure to State a Claim

Before the Court addresses whether the School Administrators have statutory immunity from these claims, the Court first determines whether a claim is stated.  *See* Moore v. Greene, 219 Ill.2d 470, 477 (2006)(whether municipality and its employees owed duty of care a separate issue from whether they are entitled to immunity).

### 1.   Intentional Infliction of Emotional Distress (Count VIII)

The minors allege in Count VIII that the School Administrators were deliberately indifferent to their parents' reports of White's misconduct. They further allege that the School Administrators left the minors in White's classroom after the reports, refused to make the mandated ANCRA reports,[9] and refused to stop White's abuse.  (Complaint ¶ 90).  They allege that the School Administrators conduct was extreme and outrageous, with the intent to cause them severe emotional distress or with reckless

---

[9]Pursuant to the above discussion, the allegation that the Administrators failed to report under ANCRA does not make out a tort claim, whatever the label.

disregard thereto, and that the conduct did cause them severe emotional distress.

Defendants contend that the minors do not sufficiently plead that they suffered severe emotional distress.  The Court believes, however, that their allegations of deliberate indifference to their pleas for protection allow such an inference.  School Administrators allegedly had actual notice of White's misconduct by three sets of parents over a two month period, but did nothing in response, allowing the misconduct to continue.  The court believes this sufficiently pleads intentional infliction of emotional distress under federal notice pleading standards.  *See* Peck v. West Aurora School Dist. 129, 2006 WL 2579678 *7 (N.D. 2006)("defendants ask too much of plaintiffs at this stage); Doe v. Woodbridge Elementary School Dist. No. 68, 2005 WL 910732 * 5 (N.D. Ill. 2005)(not reported in F.Supp.2d)(IIED claim stated where minor alleged that administrators were informed of abuse but responded with deliberate indifference).

### 2. Willful and wanton Deliberate Indifference to Known Sexual Harassment (Count XV), and Willful and Wanton Supervision of White (Count XXII)

These counts, by the minors, are against Heidbreder and Braksick only.  The deliberate indifference claim alleges that Heidbreder and

Braksick had a duty of care to the minors and were willfully and wantonly indifferent to their actual knowledge of White's sexual abuse of his students, in reckless disregard for their safety.  (Complaint ¶ 131-132, 136).  The minors further allege that Heidbreder and Braksick acted willfully and wantonly by failing to make a report or to investigate White's abuse and by failing to stop White from continuing his abuse.  (Complaint ¶  134-136).  The minors allege that they suffered bodily harm, educational harm, and severe emotional distress as a result.  (Complaint ¶ 138).  The supervision claim alleges that Braksick and Heidbreder had a duty to supervise White and willfully and wantonly breached that duty, in conscious disregard of the minors' safety.  (Complaint ¶176).

Defendants argue that no plausible inference arises that they acted willfully and wantonly.  The Court disagrees.  The minors allege that Heidbreder and Braksick were told, by three different sets of parents in a two month span time, that White was sexually grooming, harassing and/or abusing their children, and isolating their children outside of classroom instruction time.  Heidbreder and Braksick allegedly did nothing at all in response, allowing the abuse to continue.  The Court believes these allegations are sufficient, at the notice pleading stage, to allow a plausible

inference of "utter indifference to or conscious disregard for the safety of others."  745 ILCS 10/1-210.

### D. Remaining Tort Claims by Minors Against School Administrators:  Discretionary Immunity for Local Public Employees under 745 ILCS 10/2-201

Illinois state and local governments are "liable in tort on the same basis as private tortfeasors unless a valid statute dealing with tort immunity imposes conditions upon that liability."  Harinek v. 161 North Clark Street Ltd. Partnership, 181 Ill.2d 335, 345 (1998).  There are many such statutes.

One of the immunity statutes at issue here is 745 ILCS 10/2-201, which states:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

"This section immunizes public employees from liability where the injury claimed is the result of a 'discretionary policy determination.'"  Albers v. Breen, 346 Ill.App.3d 799, 806 (4th Dist. 2004).  The defendants bear the burden of proof for this affirmative defense.  "The defense must be apparent on the face of the complaint or else supported by affidavits or other evidentiary materials."  Id., *citing* Van Meter v. Darien Park District,

207 Ill.2d 359, 370 (2003).   Section 2-201 immunity protects against both negligent and willful and wanton conduct.   In re Chicago Flood Litigation, 176 Ill.2d 179, 195-96 (1997).

For § 2-201 immunity to apply, the local public employee must have been making a policy choice *and* exercising discretion.   Van Meter , 207 Ill.2d at 379.  A policy choice is one which "require[s] the governmental entity or employee to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests."  Harrison v. Hardin County Unit School Dist. No. 1, 197 Ill.2d 466, 472 (2001); Harinek v. 161 North Clark Street Ltd Partnership, 181 Ill.2d 335, 342 (1998).  A discretionary act is one which is "unique to a particular public office."  Id.   In contrast, a "ministerial" act is not afforded Section 2-201 immunity.  A ministerial act is one "which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion."  Id.

It is difficult to draw generalizations from case law applying Section 2-201.  *Compare* Harinek, 181 Ill.2d at 342 (fire marshal's planning and conducting of fire drills was determination of policy and exercise of discretion); Harrison v. Hardin Community Unit School Dist. No.1, 197 Ill.2d

466 (2001)(principal's decision to decline student's request to leave early because of inclement weather was discretionary policy decision); In re Chicago Flood Litigation, 176 Ill.2d 179 (1997)(City made discretionary policy decision regarding pile drivings); Albers v. Breen, 346 Ill.App.3d 799 (4th Dist. 2004)(§2-201 immunity for school principal in dealing with bullying situation; principal revealed identity of victim to bullies, causing emotional distress to victim, who had to attend a different school); D.M. v. National School Bus Service, Inc., 305 Ill.App.3d 735 (2d Dist. 1999) (assigning student to same bus as second student who had previously abused first student was discretionary policy decision); Moore v. Bd. of Educ. of the City of Chicago, 300 F.Supp.2d 641 642, (N.D. Ill. 2004) (handling of student's complaint regarding teacher's racist comment was discretionary policy decision; student was transferred to a different class in response to complaint); *with* Van Meter v. Darien Park Dist., 207 Ill.2d 359 (2003)(reversing 2-201 dismissal--whether planning for construction of park was discretionary policy decision or unique to office was not apparent from face of Complaint); S.G. v. Rockford Bd of Education, 2008 WL 5070334 *8 (not reported)(declining to decide, on a motion to dismiss, whether principal's handling of new student with history of sexual misconduct was a

discretionary decision); Peck v. West Aurora School Dist., 2006 WL 2579678 (N.D. Ill. 2006)(ANCRA report was discretionary policy decision, but IIED claim based on school's response to complaints of abuse was allowed to proceed).

The difficulty in drawing generalizations underscores that the decision "resists precise formulation" and can be made only on the particular facts established in a particular case.   Snyder v. Curran Twp, 167 Ill.2d 466, 474 (1995).  In the Court's opinion, there are not enough facts established in this particular case to determine whether discretionary immunity applies. The answer is not "apparent [from] the face of the complaint", Van Meter, 207 Ill.2d at 377, and no affidavits or other evidence has been submitted. Plaintiffs allege that *nothing* was done in response to three serious[10] complaints over a two-month span.  Whether doing nothing was a discretionary policy decision cannot be determined without more facts. *Cf.* Moore, 300 F.Supp.2d at 642 (in response to complaints, student was moved to different class room; e.g., something was done).

---

[10]A plausible inference arises at this stage that the parents' description of White's behavior, viewed in its entirety, raised serious questions about the safety of his students.

For example, the Court must consider "both the *type of position* held by the employee and *the type of action* performed or omitted by the employee." Harinek v. 161 North Clark Street Ltd. Partnership et al., 181 Ill.2d 335, 341 (1993). The job titles of Defendants are in the records, but there is no information about the delineation and scope of their duties. Did they all have the discretion to decide how complaints of teacher sexual abuse should be handled? Were the decisions made unique to the respective positions held? Is there a written school policy or code on the handling of these complaints? *Cf.* Moore, 300 F.Supp.2d at 645 (N.D. Ill. 2004)(attaching discipline code), *cited by* S.G., 2008 WL 5070334 *8. Were all the actions discretionary, or were some ministerial? Responding to such complaints could include both ministerial and discretionary decisions. *See*, *e.g.*, Mueller v. Community Consolidated School Dist. 54, 287 Ill.App.3d 337, 346 (1997)(though some aspects of hiring and firing are discretionary, the statutory requirement of a criminal background check was ministerial). Discovery may uncover additional actions that were ministerial and which are relevant to defining the standard of care owed to the minors.[11] Additionally, there is no evidence about what competing

---

[11]Regarding Dimovski, however, the Court, as discussed above, does not believe that a failure to report under ANCRA can be the basis for a tort claim, regardless of the claim's label. The Court accordingly does not see that the ministerial/discretionary

interests the School Administrators balanced, if any.  In sum, it is plausible at this early stage that discretionary immunity may not apply to bar all of the minors' tort claims.  In the court's opinion, this important decision deserves a fully developed factual record.

### E.    Immunity for supervision claim

745 ILCS 10/3-108 states:

(a)  Except as otherwise provided in this Act, neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury.

(b) Except as otherwise provided in this Act, neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property unless the employee or the local public entity has a duty to provide supervision imposed by common law, statute, ordinance, code or regulation and the local public entity or public employee is guilty of willful and wanton conduct in its failure to provide supervision proximately causing such injury.

 Unlike the general immunity in § 2-201, section 3-108 does not immunize willful and wanton conduct.  The two sections operate independently.   Repede v. Community Unit School dist. No. 300, 335

---

debate about ANCRA is relevant.  Even if ANCRA duties are "ministerial," there is no cause of action for violating them.

Ill.App.3d 140, 143 (2d Dist 2002)(discretionary/ministerial analysis
irrelevant under § 3-108).

The School Administrators argue that §3-108 applies only to
supervision of an "activity," not to supervision of an employee.  Defendants
cite no cases specifically addressing this question nor did the Court found
any.  Plaintiff's supplemental authority, <u>Rogers v. Cook</u>, 2008 WL 5387642
*8 (N.D. Ill. 2008), actually supports Defendants' argument—the Court in
<u>Rogers</u> stated that it did not believe that § 3-108 applied to a negligent
supervision claim because "Rogers does not allege that the school district
was negligent in supervising an activity, but rather that it was negligent in
supervising its employee, . . . ."[12]

Most of the cases found by the Court dealing with §3-108 "typically
concern situations involving adult leaders overseeing after-school
programs, lifeguards supervising swimming pools, and teachers
supervising physical education classes."  <u>Doe v. Dimovski</u>, 336 Ill.App.3d
292, 298 (2d Dist. 2003)(§3-108 did not apply where "gravamen of
complaint concerned failure to report); *see*, *e.g.,* <u>Repede v. Community
Unit School Dist. 101</u>, 335 Ill.App.3d 140 (2d Dist. 2002)(cheerleading

---

[12]Yet the Court allowed the negligent supervision claim to proceed on the
grounds that willful and wantonness could be inferred, and willful and wantonness is
only relevant under 3-108, not 2-201.

practice); Doe v. Bd of Educ. of Consolidated School District 230 Cook County, 18 F.Supp.2d 954 (1998)(guard and marching band).  However, a teacher's supervision of activities within the classroom can also fall under §3-108.  *See, e.g.,* Hill v. Galesburg Community Unit School Dist. 205, 346 Ill.App.3d 515 (3rd Dist. 2004)(teacher's supervision of chemistry experiment in classroom).  Additionally, Plaintiffs cite cases where willful and wanton supervision of a teacher was assumed to fall within § 3-108, though the question was not discussed.  *See* Peck v. West Aurora School Dist. 129, 2006 WL 2579678 (N.D. Ill. 2006)(not reported in F.Supp.2d)(allegations of willful and wanton supervision of teacher survived motion to dismiss based on § 3-108); Doe v. Sperlik, 2005 WL 32998 * 3 (N.D. Ill. 2005)(allowing willful and wanton supervision claim against district to proceed based on supervision of teacher).  Plaintiffs also cite Doe ex rel. Ortega-Prion v. Chicago Bd. of Educ., 339 Ill.App.3d 848, 791 (1st Dist. 2003), which held that a school board could be liable for its willful and wanton failure to provide supervision on a school bus for a student known to be violent and in need of constant supervision.  And, Valentino v. Hilquist, 337 Ill.App.3d 461 (1st Dist. 2003) did conclude that

the board of trustee's alleged willful and wanton failure to control one of its employees implicated § 3-108.[13]

The Court cannot conclude on this record that supervision of an "activity" or the "use of public property" cannot, as a matter of law, include supervision of White's activities in the classroom, particularly his use of his classroom to isolate female students outside of classroom instruction time and after school. A more developed factual record may better demonstrate whether the supervision of White can be characterized as the supervision of an "activity" or the "use of public property."

The School Administrators also argue that they had no common law legal duty to supervise White, and are therefore immune under Section 3-108(b). They assert that, under the common law public duty rule, they had no duty to protect the minors from White's abuse. The public duty rule does not apply here. "[A]lthough, absent a statutory immunity, governmental units are now liable in tort on the same basis as private tortfeasors, the public duty rule nevertheless prevents such units from being held liable for their failure to provide adequate governmental

---

[13]Valentino dealt with an older version of §3-108 that had no exception for willful and wanton conduct.

services." Harinek v. 161 North Clark Street Ltd. Partnership, 181 Ill.2d 335, 345 (1998).

This case is not about the School Administrators' failure to protect students outside their district from White, unlike the Urbana case. The minors here were students in the School Administrators' district, under the care and custody of the School Administrators. The School Administrators owed duties of care to the minors in their district, though statutory immunities might relieve them of liability for breaching those duties. The School District controlled White and allegedly had actual knowledge of his misconduct and actual knowledge of the identity of his victims. The Court does not see how the public duty rule would apply here, nor do Defendants cite a case that might support is application in this context. Accordingly, the Court will recommend that the willful and wanton supervision claim remain in at this time.

## IV. Motion to Dismiss by School District

### A. Respondeat Superior Liability for White's Misconduct

Plaintiffs pursue respondeat superior liability against the School District for White's hate crime and intentional infliction of emotional distress. The Court agrees with Defendants that a teacher's sexual abuse of students is not within his or her scope of employment. Accordingly, no

respondeat superior lies.  *See, e.g.,* Deloney v. Bd of Education of Thornton Township, 281 Ill.App.3d 775 n.5 (1st Dist. 1996)(sexual assault not within scope of employment); Randi F. v. High Ridge YMCA, 170 Ill.App.3d 962 (1st Dist. 1988)(sexual molestation of child not within scope of day care worker's employment); Doe v. Woodridge Elementary School Dist. No. 68 Bd. of Educ., 2005 WL 910732 (N.D. 2005)(not reported in F.Supp.2d)(dismissing claims against school district and administrators, including hate crime claim, based on municipal liability for teacher's sexual abuse of student); Doe v. Sperlik, 2005 WL 3299818 * 3 (N.D. Ill. 2005) (dismissing respondeat claims against district for teacher's intentional infliction of emotional distress, assault and battery).  The hate crime and IIED claims by the minors against White are all based on White's sexual grooming, sexual harassment, and/or sexual abuse, all conduct clearly outside the scope of his employment.

Plaintiffs cite Holder v. Ivanjack, 39 F.Supp.2d 965 (N.D. Ill. 1999), where the court held that the plaintiff stated a hate crime claim against police officers who had allegedly assaulted him and hurled racial slurs at him.  The court in Holder found that the plaintiff had sufficiently pled that the officers were acting within the scope of their employment because the officers were responding to a shooting incident.  Thus, unlike White, the

officers in <u>Holder</u> were performing their employment duties of responding to a shooting and were "'actuated, at least in part by a purpose to serve the master.'" <u>Holder</u>, 39 F.Supp.2d at 971 (N.D. Ill. 1999)("Conduct is within the scope of employment if: '(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master.'") (quoted cite omitted).  <u>Holder</u> acknowledged that "[c]onduct is not within the scope of employment if the employee's actions were different from those authorized, . . . , or were performed purely in the employee's self-interest." <u>Id.</u> (citations omitted).  White's conduct clearly falls into this latter category.

Accordingly, the Court will recommend dismissal of the respondeat superior claims against the School District based on White's misconduct. Count III is for  respondeat superior liability based on White's hate crime and should be dismissed entirely.  Count IX is for respondeat superior liability based on the IIED of White and the School Administrators.  The Court recommends that Count IX be dismissed only to the extent it is based on White's misconduct.

### B.   Respondeat Superior Liability on Claims Against School Administrators

The School District correctly points out that it cannot be liable in respondeat superior if its employees are not liable.  745 ILCS 10/2-109. However, the Court is recommending that the minors' claims against the School Administrators for supervision, deliberate indifference and intentional infliction of emotional distress remain for now (see above). Accordingly, the Court recommends that the corresponding respondeat superior claims remain as well.

### C.  Premises Liability

Count X alleges that the School District "knew or should have known of the . . . dangerous conditions on McLean County School District's premises . . . ."  (Complaint para. 99).  These dangerous conditions were White's unauthorized removal of female students from an after school program, unauthorized isolation of female students, White's use of his classroom to sexually groom and abuse his students, and White's sexual abuse of his students.  The minors allege that the School District "had unique knowledge and awareness of the dangerous conditions. . . ." and consciously disregarded them.  (Complaint paras. 101-103).

745 ILCS 10/3-102 states in relevant part:

Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition.

The School District asserts discretionary immunity under 2-201. For the reasons discussed above, the Court believes that determination is premature. It is not clear at this point exactly what decisions were even made. The School District also asserts that, under the public duty rule, it cannot be liable for White's abuse of the students. For the reasons discussed above, the Court does not believe the public duty rule is applicable on these allegations. Additionally, the case cited by the School District, Thames v. Bd of Education of the City of Chicago, 269 Ill.App.3d 210 (1st Dist. 1994), is distinguishable. In Thames, a student was wounded in the classroom by the discharge of a gun in another student's handbag. The wounded student sued the school for failing to adopt procedures to

prevent guns from being brought to school, despite the school's knowledge that guns had been brought on prior occasions.

The Illinois Appellate Court in Thames held that the school did not owe a "special duty" to the minor student in part because the school had no "unique awareness . . . [of] knowledge of a particular danger to the particular plaintiff."  269 Ill.App.3d at 215.  Here, though, the School District was allegedly on actual notice of misconduct by a specific employee (White) against specific students in his class.  The risk was not a general one to the student body at large, but a specific risk posed by White to particular students in his class.   Whether the minors can prove their claim is another question, but the Court believes that their allegations survive federal notice pleading requirements.  The allegations plausibly suggest a right to relief and give sufficient notice of the claim.  *See* Sperlik, 2005 WL 3299818 * 4 (premises claim stated with allegation that private school room given to abuser directly facilitated abuse and district knew allowing access to room increased danger to students.).

**D.  Title IX**

The School District contends that the minors fail to state a claim under Title IX.

Title IX provides that "No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, . . ." 20 U.S.C. § 1681(a); Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005)(". . . Title IX, . . ., broadly prohibits a funding recipient from subjecting any person to 'discrimination' 'on the basis of sex.'").   "[A] teacher's sexual harassment of a student may render a school district liable for sex discrimination under Title IX." Hansen v. Bd. of Trustees of Hamilton Southeastern School Corp., 551 F.3d 599, 605 (2008).  "[A] school district is subject to a private damages action only where it is deliberately indifferent to *known* acts of discrimination or harassment." Id. (citations omitted).   The harassment must be "so pervasive or severe that it altered the conditions of plaintiff's education". Mary M. v. North Lawrence Community School Corp., 131 F.3d 1220 (7th Cir. 1997).  School officials with the authority to take action must have had actual knowledge of the misconduct and must have been deliberately indifferent to it.  Gebser v. Lago Vista Independent School Dist., 524 U.S. 274 (1988).

The School District argues that the allegations do not suggest that a person with authority to take corrective measures actually knew that White

was engaging in severe and pervasive sexual harassment.  This Court

disagrees.  Both the Principal and Assistant Principal were told, by three

different sets of parents, over the span of two months, of White's

misconduct.  The parents' complaints, taken as a whole and in context, do

allow a plausible inference that Heidbreder and Braksick were notified that

White was sexually harassing or abusing at least three female students.

For example, Heidbreder and Braksick were told that White had a student

give him massages underneath his clothes, that White regularly isolated

female students outside of classroom instruction, that White held and

bounced Jane Doe 11 on his lap in a strange manner, and that the

children, just first graders, felt strongly enough to tell their parents that they

did not like White's touching.  Defendants allegedly did nothing in response

to these reports.  The Court believes these allegations sufficiently plead

deliberate indifference to known severe and pervasive harassment.  *See*

*also* Fed. R. Civ. P. 9(b)("knowledge, and other conditions of mind may be

alleged generally"). The cases cited by Defendants are distinguishable on

their facts.  *See, e.g.,* Adusumilli v. Illinois Institute of Technology, 1999 WL

528169 (7th Cir. 1999)(unpublished)(college student alleged two separate,

isolated incidents of unwanted touching by other students); Frazier v.

Harris, 266 F.Supp.2d 853 (C.D. Ill. 2003)(police officer alleged isolated

comments at work); <u>Simonsen v. Bd. of Educ. of the City of Chicago</u>, 2001 WL 1250103 (N.D. Ill. 2001)(discharged teacher alleging hostile work environment).  The minors are not required to make allegations in exacting detail in order to state a claim.  If Defendants want more detail, they may seek it in discovery.  Accordingly, the Court will recommend that the Title IX claim survive dismissal.

### Recommendations

WHEREFORE, the Court RECOMMENDS:

1)    The motion to strike punitive damages by the School District be GRANTED (d/e 4).

2)    The motion to strike punitive damages by Defendant Heidbreder be DENIED  (d/e 15), without prejudice to renewing upon a more fully developed record and thorough briefing.

3)    The motion to dismiss by White (d/e 27) be GRANTED in part and DENIED in part.  The Court recommends that the parents' claim against White for intentional infliction of emotional distress (Count IV) be dismissed as barred by the two year statute of limitations in 735 ILCS 5/13-200.  The Court otherwise recommends denial of White's motion to dismiss.

4)    The motions to dismiss by the School Administrators (Heidbreder, Braksick, Pye and Chapman) be GRANTED in part and DENIED in part (d/e's 7, 9, 11, 13).  The Court recommends that the parents' claim for intentional infliction of emotional distress (Count V) and claim for common law fraud (Count XVIII) be dismissed as barred by the statute of limitations in 745 ILCS 10/8-101.  The Court further recommends that the claims based on violations of ANCRA be dismissed for failure to state a claim (Counts XI, XIII, and XX). The Court recommends that the motions be otherwise denied.

5)    The motion to dismiss by the School District be GRANTED in part and DENIED in part (d/e 5).  The Court recommends that the following respondeat superior claims against the School District be dismissed: Count VI (parents' IIED claim); Count XIX (parents' fraud claim); Counts XII, XIV, XXI (minors' claims for ANCRA violations); Counts III (minors' hate crime claim); and, Count IX (IIED claim), but only to the extent it is based on White's conduct.  The Court recommends the motion be otherwise denied.

**If this Recommendation is accepted, the following claims will remain:**

Claims against White:

-Minors' claims for battery (Count I)
-Minor's hate crime claim (Count II)
-Minors' claim for IIED (Count VII)

Claims against the School Administrators:

-Minors' claim for IIED (Count VIII)
-Minors' claim for willful and wanton deliberate indifference
   against Heidbreder and Braksick (Count XV)
-Minors' claim for willful and wanton supervision against
   Heidbreder and Braksick (Count XXII)

Claims Against the School District:

-Respondeat Superior Claims based on Minors' claims against
   School Administrators (Counts IX, XVI, XXIII)
-Premises liability (Count X)
-Title IX

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1).

Failure to timely object will constitute a waiver of objections on appeal.

<u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986).

See also Local Rule 72.2.

      ENTER:    March 3, 2009

                        *s/ Byron G. Cudmore*

                 _____

                      BYRON G. CUDMORE

              UNITED STATES MAGISTRATE JUDGE